13-5889 Waste Management of Mississippi v. Industrial Maintenance Service Oral argument is 15 minutes to be shared by the plaintiffs, 15 minutes for the defendants. Mr. Fowler for the appellate. Are you going to divide your time? Yes, Your Honor. If Your Honor will permit, I'll do 10 minutes and then cede 3 to Mr. Anderson for waste management and then just 2 for rebuttal. That's fine. May it please the Court, my name is Wes Fowler and together with Billy Ryan, I represent Danny and Tracy Moore, who are the plaintiffs in this matter. Mr. Moore drove a roll-off truck for waste management hauling those big waste containers we've all seen. This was a 30-yard waste container that can hold various types of debris. On this day, he was sent to a location he had never been to before. It was not his normal route, not his normal customer, and he was there to pick up a different waste container. At the request of General Electric Manager Wes Yancey, he picked up the waste container that Design Fab grossly overfilled. Evidence is undisputed. Around 20 times, 10 to 20 times more than it had ever filled in one before. And in the course of trying to make it safe to haul, at the request of Mr. Yancey, this container was so heavy it snapped an inch steel cable, slammed his truck to the ground immediately with no time to react, and altered this family's lives dramatically. Is there evidence that GE knew the container was overloaded, or is it the contention that it should have known by looking at it? I think there are lots of inferential evidence. First of all, it was their concrete, their dirt. They asked these people to come out and change this driveway. And it sat there for four months, which GE saw every day. Danny Moore comes out there and knows nothing about it other than it is deceptively heavy. As Mr. Pittman, the guy that was the expert that was hired to come eventually download this after this horrible injury and weigh it, said, it had been sitting in the weather for four months, and it was much heavier than it appeared because of that. In addition, it had been sitting there for four months with that weight. It had sunk into the ground, so the back couldn't just be opened, as Mr. Moore said. It's kind of a should-have-known thing. I think so. I think it's an inference based on the facts they had available. It's not that GE was at any point involved in discussions of any sort about its being overweight. That actually may be the case, but the gentleman who would have had those discussions was terminated or left slightly before this litigation started. We talked to him informally, but that evidence is not in the record. So the discussion about who's going to take it, why don't you take it, I need to do something, that was all between DesignFab and Waste Management? No, that's not accurate. GE was involved in those, and there's evidence in the record that they were. They were trying to get this moved. The one person who didn't know anything about this container was Danny Moore. So it sounds like GE didn't. If GE was saying, why is this thing still here, they knew there was a problem with it. Correct. The only point I'm trying to make is they certainly didn't know as much as DesignFab, who loaded every ounce of that 78,000 pounds, 79,000 pounds of it. But there's some evidence that GE added to the lie. That's another point. Yes, there is some evidence. Now, how much that is, as Mr. Anderson will point out, it may not have been a lot. I'm not sure. But they certainly knew a lot more than Mr. Moore did. And in Tennessee, that's one of the primary ways to compare relative fault, levels of knowledge of the risk. In terms of reversal, Your Honor, of course, the standard of review is de novo here with no presumption of correctness. Our contention is that the trial court misapplied Tennessee law in four very important ways and possibly a fifth that Mr. Anderson is going to discuss. And then also, in addition to that, the court misapplied federal and to the extent it's a mixed question of state and federal law because of the way Tennessee substantive law works, misapplied summary judgment standards in both federal and state court. There's a secondary issue on scheduling order. I'm going to rest on our briefs on that because I think it's much less important than this issue in terms of Mr. and Ms. Moore's lives. The misapplication of Tennessee substantive law, I'm going to take them one at a time and try to briefly run through them. First, the court did not even consider what we view as the plaintiff the primary fault of DesignFab at all in this order. Of course, the court speaks through its orders only. The order never discussed the fact that, assume the court's correct, that DesignFab didn't know for a fact it overloaded that container at first. As of July 9th, Mr. Cooper testified, when did you first know that it was still there and Waste Management wasn't going to pick it up because it was too full? Answer on July 9th, I guess. Then, later, at the very latest, weeks before this accident, Mr. Cooper testified in describing his conversation with Waste Management Management. He said that when I told him I would not offload the hopper unless they paid me to come down there and do it. So they were telling this man over and over for four months, this thing is so heavy we can't move it, come fix it. We submit it as patently unreasonable for a person who creates a dangerous condition to refuse to come fix it unless they get paid for their own creation of the dangerous condition. And that's what went on for four months in this case. And the court never even considered that in trying to allocate fault, which is properly the function of the jury in any event. The second large error in our opinion, in their case law, I will cite some of these just in briefly, McIntyre v. Ballantyne, Blair v. West Tennessee Mall, Cart v. Cold Creek, all make it clear it's reversible error not to consider all of the alleged fault. That was pled in the complaint, that was submitted on the record. The fault of GE was never considered, as we've discussed here. General Electric has arguably substantial fault. It could have easily been the jury determined 49% to Danny Moore, 41% to Zynfab, and 10% to GE. We don't know, because that was never even considered or discussed by the trial court. Finally, but the next one is, if the court is going to assume the role of the jury, which we contend was highly inappropriate, but is going to do that, he must do it consistent with Tennessee law.  that the court weigh certain factors in allocating fault. Not the court, the jury, but if you're going to do the jury's job, you must do it consistent with Tennessee law. Several of those factors are highly instructive here. For example, the closeness of the causal relationship between the injury and the conduct. 78,000 pounds of material. This is the heaviest loads they've ever put in there before. It was 2.55 tons, 3.04 tons, and 1.67 tons. This was 34.27 tons. That is a lot of weight. Counsel, you've got a lot of things to say, but let me cut to the chase. Am I right that, in your view, it would be enough to reverse a loan that the judge only made the statement that your client was more at fault than Zynfab without considering GE? Yes, absolutely. Because the situation could easily be, or potentially be, as you just said, 49% to you, 41% to Zynfab, so the court would have been right in statement, 10% to GE, and you would have been less than 50% at fault, and under Tennessee law you would not be excluded. The answer is yes, and I think McIntyre v. Ballantyne and McNabb v. Highways, Inc. makes that obvious reversible error. From your point of view, that alone, all the rest of the stuff you're throwing at us, isn't necessary to get a reversal at least. Correct. GE would have been on this verdict form, and respectfully to Zynfab, at trial they would have been beating the drum of how negligent General Electric was, which this never even got discussed on summary judgment. In short, going through the Eaton factors, virtually all of them, either weigh in Mr. Moore's favor heavily without even taking the evidence in the light most favorable to him, or are close calls. Finally, there's clear, clear Tennessee law that allocating fault, even for the jury, while proximate calls at issue, is reversible error. Prince v. St. Thomas, reversing a summary judgment just like this, where the court said, well, you're more at fault than the defendant or defendants, so summary judgment. That got reversed, the court said that's not the law in this state, proximate calls has to be determined first. Finally, the next big category is misapplication of summary judgment principles. The court made several findings that just don't jive at all with virtually any of the evidence. So it either weighed the evidence, or it did not take the evidence in the light most favorable to Mr. Moore and the other requirements under the rule. Here's some examples. The court did find that Mr. Moore quotes, knew the container was overweight, which is true. The problem is, what does overweight mean? There are two too heavy meanings here, both in the policies and everywhere else, and the first one is too heavy to haul over the road. The federal statutes require that the truck total can't weigh more than 66,000 pounds. This one weighed 113,000 pounds with that load. Mr. Moore knew and explained to Mr. Yancey, that's too heavy to haul. Best I can do is what we do sometimes, dump some of it out to try to make it safe. Short answer here, Mr. Moore was the one person trying to make this safe. He just didn't have enough information to know that it created a danger, and he testified specifically to that. Both Mr. Moore and Kevin Shackelford testified this is done. Waste management does this procedure. Now, there's a disagreement how often it's done. Mr. Moore said he did it a whole lot at Mr. Shackelford's instructions. Next, the whole idea that DesignFab didn't know of a weight restriction, they signed a contract that said there was weight restriction. There's testimony from Greg Miley. I always tell these folks, if it's this type of material, I always ask and I always tell them don't overload past this level. That's circumstantial evidence. People are sentenced to death based on circumstantial evidence. That evidence wasn't considered in the light most favorable to Mr. Moore, or summary judgment would not have been granted. The prior loads that DesignFab had used make it clear that they knew there was a weight limit. This is so grossly beyond. They're trying to save a buck on not getting an extra container in there, and it caused this horrible injury. Your Honor, I see I've only got 15 seconds left, so I'm going to reserve the rest of my time. Unfortunately, there's so many, frankly, errors here, I can't get to all of them. You're doing your best, though. Moving fast. Good morning. May it please the Court. My name is John Anderson of the Nashville, Tennessee Bar, and I'm here on behalf of the Intervening Petitioner Waste Management. I have very few minutes, very little time, so I'm going to just touch on a few points. We have a workers' compensation lien in this case. The workers' compensation case is still going on. Mr. Moore is still treating. And before the case is concluded, we may have a very significant interest in this case. We believe we've been greatly prejudiced by the reversible error committed in this case. Were you just subjugated to his claim, or do you have your own separate claim? We're subjugated to his claim. So you don't get anything if he doesn't. That's correct, Your Honor. First, the summary judgment standard. As Mr. Fowler has explained in detail, there are significant factual issues on almost every fact in this case. I've never seen a case where almost everything is disputed. If you look at the district court memorandum opinion order, footnotes 2 through 13 acknowledge that all these facts are disputed. Everything is in dispute. The judge, we believe, did not draw all the inferences in favor of the nonmoving party and did not construe all the evidence in favor of the nonmoving party. Let me ask you a question which just goes to my, you know, obviously I was a trial judge in Tennessee, and I have tried comparative fault cases, but not that many in the federal court. And so this is a question which may reflect my stupidity. I understand that, you know, Mr. Moore doesn't have a claim against you, but if your client was negligent a part, and I understand nobody is arguing this here, but if your client was negligent a part from Mr. Moore's alleged negligence, would that be an appropriate thing for the jury to consider in this case, or is that precluded because of the comp claim? Yes, that's precluded from the comp. He has to prove he had an injury within the course and scope of his employment. And then you're out of it for all purposes. I'm not sure what you mean by out of it. We're in the work comp case, and we have a defense. There are various defenses. In other words, if you bore some negligence in the failure to remove, Design Fab and GE could not profit by your negligence because of the comp claim. That will not be a line on the jury verdict. That's what I'm asking. I just wanted to understand. Yes, Your Honor. But GE will be on there. Oh, I understand about that. Well, unless Mr. Overstreet convinces us to the contrary. My time, I'm going to talk a little faster because I've got very few seconds. On the duty issue, we believe the Tennessee Supreme Court in the Staples case was clear. In negligence cases, only after the element of duty has been established does the court get to the comparative fault issue. In this case, the court never resolved that issue but went straight to the comparative fault. I'm sorry. I see my time has expired. Thank you. Counsel. Good morning, may it please the court. My name is Tracy Overstreet. This is Jeff Nickerson. We here represent Design Fab and Industrial Maintenance Services, Inc. Appreciate the court's time. Judge Boggs, I wanted to address something that you spoke to Mr. Fowler about to make sure that the court is aware. You had asked him if the single basis, if the failure of Judge Anderson to give an allocation of fault in his order to GE, would that lead to reversal? I would note in Judge Anderson's order, page ID 3230, the court makes a specific finding as a matter of law that Moore may not recover because he was more than half at fault for his injuries. And that's significant. I found that. But he also says the other, does he not? He does. Moore is more at fault than Design Fab. He does that. You're correct. It's not apparent from his order that in any way he's considering GE as a potentially negligent party who could be considered in the comparative fault. The word party was inappropriate. An entity that could be, to whom fault could be apportioned. I think that's a fair reading of the order. However, I think we're getting to the meat of the issue here. And it touches on some things that Mr. Anderson noted. We, the defendants in this case, raise an affirmative defense of comparative fault. That is a separate issue that goes outside of the analysis that you do in a negligence case. We challenge the elements of negligence. And the judge went through in his order and addressed, made findings on those specific ones. But Eaton and Cone both speak to the fact, Eaton, matter of fact, if you go and read Eaton, they give general guidance to the courts and to the juries how you're supposed to compare fault amongst parties. But then it specifically goes on to say that you can then presume that both parties have negligence on them. And then go and look at the conduct. And if plaintiff is determined to be more than 50% at fault for his injuries, then his claim will be barred. So I would, you know, it's our position that that's the end of the test. It was not necessary for Judge Anderson to say, well, more is more at 50% and the rest of the allocation goes as follows amongst these other parties. It was sufficient for him to make the finding that he did, that Mr. Moore would be more at 50% at fault for his injuries. Let me add, I'm sorry, that because you sort of raised something that I think is important in the flow of the opinion. At page 23 is kind of the end of the discussion. And he says, that's where I was quoting earlier, the court holds as a matter of law, Moore was more at fault than Design Fab and as such grants the motion for summary judgment. That would seem to be kind of the end of the line. Now you're right that on page 25 and 26, under conclusion, he then says Moore is at least 50% responsible for his injuries, but there's no connection between those two that explains why he went from statement 1 to statement 2. And I would also remind the court of the statement he has on page 20, where he first makes the finding that Mr. Moore would be more than 50% at fault. He makes that finding on page 20. In the last paragraph. Well, Your Honor, I don't know that he's going forward and backward. You know, look, you've seen the briefing. This motion for summary judgment had lots of findings related to it. There was a substantive response and then there was a 56D and then there's a lot going on with that. But bottom line, in the record, what you just noted, he makes that clear finding. Then, interestingly, in the immediate following line, it quotes a case, so long as a plaintiff's negligence remains less than the defendant's negligence, the plaintiff may recover. And he says, but in this case, it's the other way around. So that certainly sounds like he's only talking about the two people in front of him. And, of course, if he's only talking about the two people in front of him, then, yes, Moore is more than 50% responsible vis-a-vis you. Is there any indication there that he's looking at everybody that might be responsible? Once again, Judge, all I can do is look to his order on page 20, his finding, his conclusion that you noted on page 25, his concluding statement on the point. And if I can back up a moment, I think we've given a good brief to the court that addresses, hopefully, a lot of the issues because there's a lot to talk about. We think Judge Anderson made an informed decision in that he considered all the evidence. Well, what is it? I mean, you obtained a rather unusual result in this case. You don't often see these kinds of cases. I often see summary judgment awarded in these kinds of cases. What is it about the factual record that makes you think it's appropriate as a matter of law to conclude that Mr. Moore was more than 50% at fault? Well, this job at this GE property began in June of 2010. It was completed over the July 4th weekend of 2010. On July 9th, 2010 is when my client contacted Waste Management and said, We have filled the container. Is there any indication that Mr. Moore knew about any of that? Well, there is some testimony before the court on that. And if Your Honor, let me... What is it? A Waste Management employee went to pick that container up on July 9th and it was determined at that time that it was too heavy. Mr. Kevin Shackelford, who is a 30B6 representative for Waste Management, gave a deposition in this case. He said after that point that their drivers were informed this container is at the GE property. Don't touch it. Leave it alone. Now, it's granted that Mr. Moore denies he ever heard that. But that was from their corporate representative. What was the exact issue then? Factual question. Also, I want to address something. There were two of these Roloff-type drivers. There is Mr. Moore and Mr. Jerry Kunzel. And there's testimony that they rotated these routes. It's been represented to you that this is the first time that Mr. Moore had gone to this GE property. That's not what the record reflects. This was a regular, standard customer of Waste Management. Wait a minute. Is there testimony from Mr. Moore? It was the first time he'd gone there? No, Judge. There's no testimony from anyone it was the first time he'd gone there? I don't recall that testimony being in the record, Judge. So it is known that container is overweight. It's known. As a matter of fact, it's known by Mr. Moore. We do know that Mr. Moore knew it was overweight because when he went to the GE property on November 19th, he had a discussion with a GE supervisor, an employee of GE. And there's disagreement amongst the two of them as to who suggested that Mr. Moore attempt to move this container. Mr. Moore says this GE person came to him and said, This is Yancey, right? That's Mr. Yancey. That's correct, Judge. And Mr. Moore says, Well, Mr. Yancey approached me. Mr. Yancey says, Well, Mr. Moore approached me. But regardless as to whom approached whom, they both agreed that Mr. Moore then said to Yancey, Well, we have talked about this container before. You know it is too heavy for me to take on the road. And then Mr. Moore offered to hoist the container to dump the materials out on the site. It is clearly established in the record that Mr. Moore knew this container was overweight when he arrived on the scene that day. As a matter of fact, in his deposition, under questioning from his own attorney, Mr. Fowler noted to him, You have told us over 100 times today you knew it was overweight. You knew it was overweight by sight and feel. Mr. Moore says, He has been driving for them since 2002. He says, You know, I can tell that thing was overweight. And when asked, Well, how would you describe it? Would you say it was significantly overweight? He acknowledges, Yes, it was significantly overweight. So he was aware that the container was overweight. So it is the evidence that he was aware of its being overweight that makes summary judgment appropriate in this case. We have got to combine that with his training. The training and the documentation, the waste management rules, books, and procedures direct their drivers, Do not hoist or do not lift an overweight container. As a matter of fact, they have a little slogan. It is called haul or call. If you are not able to haul the container, you are directed to call dispatch. And that is apparently what happened in July when the first driver went out there to pick this container up. It was determined it was too heavy. It sat there and did not hurt anyone from July through November while Waste Management and Design Fab were having this discussion amongst themselves as to who was going to be responsible for this. Do you admit that there is evidence of negligence by the driver and by your client both? Judge, I don't know that I can say that there is evidence of negligence on my client. You are saying there is none there. Well, it... Did the district judge find that there was no evidence of negligence on the part of your client? The district judge did not make that finding, Your Honor. It is kind of unusual for the district judge to weigh the respective negligences. Or do you say that is pretty common in Tennessee law? I am not going to say it is pretty common. I think Judge Gibbons was correct to note that this is not your ordinary case. However, it is not so rare that it is unheard of. I mean, you know... It is a jury question where you allocate the fault, right? I mean, the degree of negligence. Yes, Judge. I am mindful of Rule 56 which allows a party to come forward to bring a motion and one of the bases can be an affirmative defense. And I am also mindful of Rule 1 which says one of the rules is to be construed to allow for a just, speedy resolution of the case. In this case, when Judge Anderson looked at the conduct of the parties and really it is pretty evident that what he focused on was the conduct of Mr. Moore and what we presented to him. Because, once again, he shows up that day. That container has not hurt anyone. He was not directed... Isn't that in itself problematic? Because, when you are apportioning fault, you have to look at the total... all the negligence you have got in the case and then figure out who is responsible for each percentage of it. I mean, that is the process a jury would go through. So, why shouldn't... If Judge Anderson is going to allocate fault to Mr. Moore, why shouldn't he perform that same analysis? Well, Judge, you know, what he may have done in chambers and what he did on his sketch pad, I am not privy to that. We are not privy to his in-chambers thoughts. That is correct. And, you know, all we have is the order that he has given us. And, as discussed with Judge Boggs earlier, you know, he, at multiple points, makes findings that he rules that Mr. Moore is going to be at least 50% at fault. You know, I was making the point that, you know, the training, you know, says don't do this activity. He has tested on that training. It is almost like it kind of turns it almost into our old contributory negligence as a matter of law if you only look at the, you know, whether the plaintiff is more than 50% at fault. I mean, because you are not considering any of the other fault. Well, I want to make sure in... Judge Toller, you know, when I addressed your question earlier, I don't know that he made a finding or an allocation of fault. But he did talk about the theories of negligence that were asserted against Design Fab. I mean, he addressed those in his order. And he says, you know, and he looked at the conduct of the parties. And he applied, you know, he referred to it as the hand formula. And he looked at the actions of Moore and he looked at the actions of Design Fab. He weighed the evidence. Judge, he looked at our affirmative defense. If there was any negligence on the part of your client at all, then he weighed the evidence, right? I'm not going to say he weighed the evidence. I'd say he engaged in the analysis of the comparative fault under the affirmative defense standard in Tennessee. And so, you know, he did consider the claims that were asserted against Design Fab and the theories of negligence asserted against them. But, you know, once again, he looked at the evidence and said, look, this presented is true. You know, reasonable minds on the jury could not differ that under these facts that plaintiff would be at least 50% at fault. I mean, once again, you know, I go back to that day. Mr. Moore went to the GE property to service regular containers. He was approached or he approached this GE representative. They had this discussion. Mr. Moore was not directed by waste management to go out there and engage in this activity that day. Mr. Moore did not contact waste management and advise them I'm intending to do this. He took that upon himself. He didn't have any direction from anyone. In the four-month period of time that container was sitting there, it didn't hurt a soul. Mr. Moore knew it was overweight. He described it as significantly overweight. And I can observe this. He hooks his cable up, gets in the cab of his truck, engages the lever, which he has to hold. He has to positively hold that position for this thing to spool up. And if at any time he senses a danger or condition, he's instructed, if you feel the front of your truck coming up, you stop. Mr. Moore didn't do that. That sounds like a closing argument to the fact finder there. Well, Judge, it's just an indication of what Judge Anderson had before him in making his determination and finding that reasonable minds could not differ and that plaintiff would be more 50% at fault. We think Judge made an informed decision. We think his order is accurate. And we think it should be affirmed. I thank you, Court. Thank you, Counsel. Two minutes for rebuttal or two minutes in change? Yes, Your Honor. Briefly, Mr. Moore did know this container was too heavy to haul over the road. That's why he agreed to try to dump some of the contents out to correct the dangerous condition designed to find Fab refused to correct for four months, which he didn't know. What he didn't know was that it had 113,000 pounds of material in it. But once his front end, if I understand it right, came, not just started to come up, it came up so far that that's what caused his horrible injuries. He figured out pretty quick. Isn't that pretty negligence? Well, it would be, except he testified it happened instantaneously. He was preparing to lower that when the cable snapped. Cables don't snap slowly. It's still cables. No, it snapped, but how long did it take the front end to come from the ground up to however high it got? He said it was almost instantaneous in his deposition. He said there was no time at all to react, and he would have if he had time. Now, I'll read his testimony. Mr. Moore was asked, because the question is not that it was too heavy. Do you know it was a risk? Would you have known there was some weight at which the container would have been overloaded by? No, where's the line? That's not the right quote. Okay, did you know whether the cable could break like it did, whether that was a possibility at the time? Yes or no. So he's never seen anything like that before. The policy at issue, first of all, Tom Pittman's affidavit is very telling. Mr. Pittman at 23 says, the 30-yard container appeared to be overloaded, but there's no way to know how heavy it was. This is an impartial witness. After the download, the contents of the 30-yard container revealed wet dirt, sand, gravel, and asphalt which had been left exposed to weather and elements for months, and the contents hardened like cement. The weight of the container was far in excess of its appearance. That's an independent witness who was an expert hired to come download this stuff, and that's what he said. The rule book, assumed for a second he did violate those rules, which he didn't. In Tennessee, the standard is violation of internal policies is only evidence of negligence. It's not some ipso facto summary judgment. If you look at the actual policy, what it actually says is that the only way to know if it's too heavy to hoist is to hoist it, and if the front of the truck lifts, then you put it down. That's all my time,   This was very challenging. That sounds like an interesting case. Thank you, gentlemen. The case will be submitted. The remaining cases will be submitted to the Supreme Court. The remaining cases will be submitted on briefs, and you may adjourn court.